Joanne CHATELAIN and Daryl Mote
*v.* Lawrence A. KELLEY

95-450                                              910 S.W.2d 215

Supreme Court of Arkansas
Opinion delivered November 20, 1995

*Bailey Law Firm*, by: *Frank H. Bailey*, for appellants.

*Davis, Cox & Wright*, by: *Constance G. Clark* and *Walter B. Cox*, for appellee.

DAVID NEWBERN, Justice. At the end of a full-term pregnancy in 1989, appellant Joanne Mote, whose name is now Joanne Chatelain, was admitted to a hospital for delivery of her child. While she was awaiting delivery, an emergency Caesarian sec-

tion became necessary, and Dr. Lawrence A. Kelley, the appellee, was to perform the procedure. Ms. Mote and her then-husband, appellant Daryl Mote, alleged the child was stillborn due to a delay in the operation caused by Dr. Kelley. They sued Dr. Kelley and the hospital for wrongful death.

After a voluntary nonsuit in 1992, the complaint was refiled against Dr. Kelley only. The Trial Court concluded that an unborn fetus is not a "person" for purposes of the Arkansas Wrongful Death Statute, Ark. Code Ann. § 16-62-102 (Supp. 1993), and granted Dr. Kelley's motion for summary judgment. We affirm the judgment.

As it did in 1989, § 16-62-102 provides in significant part the following:

### Wrongful death actions — Survival.

(a)(1) Whenever the death of a person shall be caused by a wrongful act, neglect, or default and the act, neglect, or default is such as would have entitled the party injured to maintain an action and recover damages in respect thereof, if death had not ensued, then, and in every such case, the person who, or company, or corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death may have been caused under such circumstances as amount in law to a felony.

\* \* \*

(b) Every action shall be brought by and in the name of the personal representative of the deceased person. If there is no personal representative, then the action shall be brought by the heirs at law of the deceased person.

Whether the death of a fetus is the "death of a person" in the context of the law of wrongful death is an issue of first impression in Arkansas. As reported in B. Lingle, Comment, *Allowing Fetal Wrongful Death Actions in Arkansas: A Death Whose Time Has Come?*, 44 Ark. L. Rev. 465 (1991), a majority of the states which have considered the issue have interpreted similar legislation to hold that the death of a fetus qualifies as the death of

a person. A significant minority of jurisdictions have, however, concluded to the contrary. *See also* S. Speiser, C. Krause, and J. Madole, *Recovery for Wrongful Death and Injury* (3d Ed. 1992 and Supp. 1995); Annot., 40 A.L.R.3d 1222 (1971).

Typical of the majority view is the strong opinion in *Summerfield* v. *Superior Court*, 698 P.2d 712, 144 Ariz. 467 (1985). The Arizona Supreme Court reviewed the history of the issue from Justice Holmes's pronouncement in *Dietrich* v. *Inhabitants of Northampton*, 138 Mass. 14, 52 Am. Rep. 242 (1884), that no action would lie for the death of a fetus because it was part of its mother rather than an independent being, through present-day pronouncements to the contrary. The Arizona Court pointed out that the law clearly would allow a cause of action for a prenatal injury resulting in the death of a child born alive, and it is thus illogical to say that a prenatal injury resulting in the death of a viable fetus should not form the basis of a wrongful death claim. The Court stated that "with regard to the issue of recognizing a loss to the survivors, viability is a less arbitrary and more logical point than the moment of birth."

A common thread in the cases adopting the majority view is that the action for wrongful death is "remedial" in nature and is thus to be interpreted liberally with a view to accomplishing its purposes of compensating injured persons and deterring harmful conduct. *See, e.g., Volk* v. *Baldazo*, 651 P.2d 11 (Idaho 1982).

Cases espousing the minority view include *Duncan* v. *Flynn*, 342 So.2d 123 (Fla. App. 1977), in which it was held that there must be a live birth to sustain a claim with respect to a prenatal injury to a fetus under a wrongful death law. The Court referred to its earlier opinions where it held that once a child is born alive, he or she is a "person" who can maintain an action for damages resulting from any prenatal injuries that were suffered. The holding was that a live birth must have occurred either through complete expulsion in a vaginal delivery or complete removal in Caesarian section, for acquisition of a "separate and independent existence" from the mother.

In addition to drawing the recovery line at "live birth," other courts in the minority have considered legislative enactments in other areas of the law which have treated injuries to stillborn fetuses differently from injuries to those born alive. In *Giardina*

v. *Bennett*, 545 A.2d. 139 (N.J. 1988), the New Jersey Supreme Court noted how the state legislature distinguished between persons and stillborn infants and fetuses when it had the opportunity, particularly in the Uniform Anatomical Gift Act. [*See* Ark. Code Ann. §§ 20-17-601 through 20-17-617 (Repl. 1991 and Supp. 1993).] The Court observed that "the Legislature has in other ways dealt with the consequences of the prenatal condition," such as allowing children, once born, "to acquire rights or interests by way of inheritance or other devolution of property." Also, at the time the New Jersey Wrongful Death Act was enacted, a fetus was not considered a person. Under these circumstances, it was held that the legislature "never intended to create a derivative action in favor of the survivors of a fetus never born alive. . . ."

The Iowa Supreme Court was also constrained by its rules of statutory construction when it made its decision in *Weitl* v. *Moes*, 311 N.W.2d 259 (Iowa 1981), distinguished on other grounds in *Audobon-Exira Ready Mix* v. *Illinois Gulf Railroad Co.*, 335 N.W.2d 148 (Iowa 1983). The Iowa Court observed that a "person" is a human being who has "attained a recognized individual identity" by being born alive. It was noted that Iowa, unlike some other states, had a "survival" kind of wrongful death statute. The Court stated:

> Such a statute does not create a new cause of action in a decedent's survivors; rather, it preserves whatever rights and liabilities a decedent had with respect to a cause of action at the time of his death. [Citations omitted.] The cause of action thus preserved is deemed to accrue to the decedent's estate representative "at the time it would have accrued to the deceased if he had survived."

Our § 16-62-102 is also a "survival" kind of statute. Under the Iowa wrongful death statute, a cause of action only accrues when a person, once "living," has died. The Court engaged in a statutory analysis similar to the New Jersey Supreme Court's opinion in the *Giardina* case. It examined the Iowa Code and noted that in other areas the "legislature has not hesitated to be specific when it intended a statute to apply to fetuses." Since an earlier decision in which a fetus was determined not to be a person, the Iowa legislature had not amended the wrongful death statute to include fetuses.

Another concern expressed in the minority jurisdictions has been measurement of the recovery. In New Jersey when *Graf* v. *Taggert*, 204 A.2d 140 (N.J. 1964), was decided, the damages that could be recovered under the wrongful death act were limited to pecuniary loss. Without reaching the question whether a fetus was a "person," the Court declined to recognize that a cause of action could be maintained because damages would be too speculative: "It is virtually impossible to predict whether the unborn child, but for its death, would have been capable of giving pecuniary benefit to its survivors." *Id.* at 144.

In *Endresz* v. *Friedberg*, 248 N.E.2d 901 (N.Y. 1969), the New York Court of Appeals echoed the same concern, saying, "If the fetus is stillborn, speculation as to causation and particularly loss suffered is unreasonably increased." The New York Court also perceived a risk of double recovery and said:

> [S]ince the mother may sue for any injury which she sustained in her own person, including her suffering as a result of the stillbirth, and the father for loss of her services and consortium, and additional award to the "distributees" of the foetus would give its parents an unmerited bounty and would constitute not compensation to the injured but punishment to the wrongdoer.

Various reasons have been held to justify adhering to the "live birth" rule in these states. One has been the difficulty in moving the line from live birth to viability. The Court in the *Endresz* case stated:

> It is argued that it is arbitrary and illogical to draw the line at birth, with the result that the distributees of an injured foetus which survives birth by a few minutes may have a recovery while those of a still born foetus may not. However, such difficulties are always present where a line must be drawn. To make viability rather than birth the test would not remove the difficulty but merely relocate it and increase a hundredfold the problems of causation and damages. Thus, one commentator aptly observed that (Wenger, *Developments in the Law of Prenatal Wrongful Death*, 69 Dickinson L. Rev. 258, 268), "since any limitation will be arbitrary in nature, a tangible and concrete event would be the most acceptable and workable boundary. Birth, being

a definite, observable and significant event, meets this requirement."

In addition to this line-drawing problem, courts have also considered the different situations of the stillborn fetus and the child who survives birth and must live with his or her injuries. The *Endresz* case is an example. In *Justus* v. *Atchison*, 565 P.2d. 122 (Cal. 1977), the California Supreme Court compared the emotional effect of loss of a fetus with loss of a child after a living birth had occurred.

The combination of expressions of public policy, logic, precedent, and legislative intent found in the cases of other states presents a very difficult field to traverse. We find the crossing less difficult, however, when we add decisions we have made on the periphery of the question presented.

In three cases, we have had the opportunity to touch upon the issue of whether a fetus can be considered a "person." Dr. Kelley contends the holdings in these cases indicate a disposition to hold that, for purposes of wrongful death suits, a fetus is not a person. On the other hand, the Motes contend that these decisions were in other areas of law so we are not precluded from holding that a fetus is a person in the wrongful death context.

In the first case, *Carpenter* v. *Logan*, 281 Ark. 184, 662 S.W.2d 808 (1984), Sheryl Carpenter was killed in a car accident while she was between eight and eight-and-one-half months pregnant. The investigating officer found the dead fetus outside Sheryl Carpenter's body and concluded that the force of the impact had thrust the fetus through the mother's abdominal wall. The widower, Cary Carpenter, filed a petition in probate court for the appointment of an administrator for the fetus. The Probate Court held it was without authority to order the administration of the estate of an unborn fetus. Mr. Carpenter appealed and framed the issue as "whether an unborn viable fetus or viable fetus born dead as direct result of trauma caused by negligence or willful and wanton misconduct has a cause of action against the tortfeasor."

We affirmed the decision of the Probate Court. In doing so, we noted that the issue stated by Mr. Carpenter could be reached

only in an adversary tort proceeding and not in an *ex parte* probate proceeding. We said:

> The wrongful death statute, Ark. Stat. Ann. §§ 27-906-27-910 (Repl. 1979), will determine whether, or to what extent, there is a right to maintain an action, or to recover damages, for the death of an unborn child. The action, if any, is a tort action and is cognizable in circuit court. We will not interpret the wrongful death statute in an ex parte probate proceeding. . . . The issue before the probate court and now on appeal in this case is whether an unborn fetus or a fetus born dead is a deceased person within the terms of the probate code. . . .

The Motes argue the foregoing language indicates we did not decide the issue in *Carpenter* v. *Logan* because the wrongful death statute was not applicable in a probate proceeding. Dr. Kelley argues that this opinion supports his position because we went on to state that, within the context of probate, there was no basis for the conclusion that a fetus can be considered a "decedent." We said:

> In Arkansas the probate court is a court of special and limited jurisdiction, having only such jurisdiction and powers as are conferred by the constitution or by statute, or necessarily incidental to the exercise of jurisdiction and powers specifically granted. [Citation omitted.] Nothing is said about unborn children in the constitutional provision concerning probate courts or in the statutory jurisdictional provision. [Citations omitted.] Any attempt to extend the probate code to unborn children would be without specific authority and would be void.

Dr. Kelley argues that, just as a fetus cannot be considered a "decedent" under the probate code, a fetus should not be considered a "person" under the wrongful death statute.

In *Carpenter* v. *Bishop*, 290 Ark. 424, 720 S.W.2d 299 (1986), Mr. Carpenter, as father and next friend, sued the mother, alleging that her negligence had resulted in the death of the fetus. On appeal, we concluded that the issue of whether a viable fetus born dead is a "person" need not be reached, because the suit against Sheryl Carpenter was barred by the doctrine of parental immunity.

In *Meadows* v. *State*, 291 Ark. 105, 722 S.W.2d 584 (1987), we decided a fetus was not a "person" as the term was used in the manslaughter law. Mr. Meadows, while intoxicated, drove his car across the center line of the highway and struck an oncoming car. The driver of the car and a viable fetus being carried by the passenger were killed. Mr. Meadows was convicted of two counts of manslaughter. On appeal, he argued that the reckless killing of a viable fetus is not included within the purview of the manslaughter statute which refers to causing the death of another "person." Ark. Code Ann. § 5-10-104 (Repl. 1993).

In our opinion, we noted that the term "person" was not defined by the statute, and therefore, reference had to be made to common law for a definition. At common law, the terms "human being" and "person" did not include fetuses.

We also noted the following in the *Meadows* case:

> An early feticide statute, Ark. Stat. Ann. § 41-2223 (Repl. 1964) provided that "the willful killing of an unborn, quick child, by any injury to the mother of such child, which would be murder if it resulted in the death of such mother, shall be adjudged manslaughter." . . . However, that manslaughter statute, specifically relating to unborn children, was expressly repealed by Act 928 of 1975. Obviously, the legislative intent shown, if any, is that the killing of a viable fetus is not manslaughter.

Dr. Kelley contends the case supports his position as both we and the General Assembly refused to recognize a viable fetus as a "person" for purposes of the crime of manslaughter. The Motes argue the case and statutory revision are essentially irrelevant because they do not deal with the civil action for wrongful death but have to do with the creation of a common law crime and interpretation of a criminal statute which is circumscribed by thick constitutional strictures. We tend to agree with both points of view, but we add that the reference to the revision of the manslaughter statute, like the reference to fetuses in the Uniform Anatomical Gifts Act, both in New Jersey and here, demonstrates that the General Assembly knows how to include the proper terminology or exclude it in accordance with its intent to protect or not to protect fetuses.

■ Finally, it must be noted that since these cases were decided, Amendment 68 was added to the Arkansas Constitution. In that Amendment, the public policy of the State regarding unborn children is announced as follows: "The policy of Arkansas is to protect the life of every unborn child from conception until birth, to the extent permitted by the Federal Constitution." If we were to hold that Amendment 68 was a self-executing amendment requiring us to interpret the wrongful death law as protecting fetuses in accordance with its terms, we would have to draw the line not at birth or at viability but at conception, and that is a position that has not been advanced by anyone to our knowledge.

■ In addition to the Constitution, the public policy of this State is found in its legislation. *Guaranty Nat'l Ins.* v. *Denver Roller, Inc.*, 313 Ark. 128, 854 S.W.2d 312 (1993); *Walmart Stores, Inc.* v. *Baysinger*, 306 Ark. 239, 812 S.W.2d 463 (1991). The General Assembly is particularly suited to making this sort of policy decision. *Nabholz Constr. Corp.* v. *Graham*, 319 Ark. 396, 892 S.W.2d 456 (1995). Despite its obvious ability to do so the General Assembly has not seen fit to expand the definition of "person" beyond the common law limits found in the manslaughter and probate contexts.

■ We are reluctant to create an inconsistency in the laws of this State by holding "person" includes viable fetus for the purpose of the wrongful death statute when we have reached the contrary conclusion in the criminal law and the law of probate.

Surely this decision will heighten the General Assembly's awareness of the issue at hand, and we commend it to the legislative prerogative.

Affirmed.

GLAZE, CORBIN, and ROAF, JJ., dissent.

TOM GLAZE, Justice, dissenting. At least thirty-one states judicially allow a wrongful death action for the death of a viable fetus. Only nine states preclude such an action. The reasons given in support of those jurisdictions which permit recovery for the tortious conduct of another causing prenatal injury resulting in the death of a viable unborn child are compelling.

It is first noteworthy to say that, while Arkansas has, as yet, not decided the issue, virtually all American jurisdictions have ruled that a tort action can be maintained to recover damages for prenatal injuries negligently inflicted, if the injured child is born alive. *See* 40 A.L.R.3d 1222, 1228 (1971); Prosser and Keeton, *The Law of Torts* § 55, at 368 (5th ed. 1984). In this respect, Prosser states that the child, if he is born alive, is now permitted in every jurisdiction to maintain an action for the consequence of prenatal injuries, and if he *dies* of such injuries *after birth*, an action will lie for the wrongful death. This statement appears consistent with Arkansas statutory law, and the majority opinion here takes no exception to this proposition. While the majority opinion appears to recognize that a prenatal-injured, viable fetus may have a cause of action for negligence if the fetus is born alive, no such action exists if the fetus is stillborn. Such a distinction is illogical.

In my view, it is logically indefensible and unjust to deny an action where the child is stillborn, yet permit the action where the child survives birth but only for a short period of time. See *Werling* v. *Sandy*, 17 Ohio St. 3d 45, 476 N.E.2d 1053 (1985). To illustrate the absurdity of this live-birth requirement adopted by the majority court here, one need only consider the following incisive hypothetical situation as set out in *Werling*:

> . . . Suppose, for example, viable unborn twins suffered simultaneously the same prenatal injury of which one died before and the other after birth. Shall there be a cause of action for the death of one and not for that of the other? Surely logic requires recognition of causes of action for the deaths of both, or for neither.

*Id.*, 476 N.E.2d at 1055 (citation omitted).

The rule our majority court adopts today, denying a cause of action for a stillbirth child, was also thoroughly criticized in *Presley* v. *Newport Hospital*, 117 R.I. 177, 365 A.2d 748 (1976), as follows:

> [I]f prenatal injury is wrongfully inflicted there is no perceptible reason why there should be a legally recognized difference between a death that occurs immediately before birth and one that occurs immediately after . . . . [I]t

makes poor sense to sanction a legal doctrine that enables the tortfeasor whose deed brings about a stillbirth to escape liability but that renders one whose wrongdoing is less severe answerable in a wrongful death or other negligence action merely because his victim survives birth.

*Id.*, 365 A.2d at 753. *See also Hopkins* v. *McBane*, 359 N.W.2d 862 (N.D. 1984).

Besides the illogical results that can ensue from adopting the minority rule which bars recovery for a stillborn child but not one born alive, the majority opinion also gives no more than lip service to the remedial nature of Arkansas's wrongful death statute. For example, North Dakota, whose wrongful death statute is almost identical to Arkansas's, has held that its statute's purpose is to provide a right of action against one whose tortious conduct causes the death of another, and to the extent that it might be argued an ambiguity exists under the statute, the law should be construed liberally to accomplish its objective. *Id.* at 865. That being so, the wrongful death statute authorizes an action against one whose tortious conduct causes the death of a viable unborn child. *See also O'Grady* v. *Brown*, 654 S.W.2d 904, 910 (Mo. banc 1983) (court held the term "person" as used under Missouri's wrongful death statute includes the human fetus *en ventre sa mere*, and further stated to hold otherwise would frustrate the remedial purpose for which the statute was intended).

The majority opinion permits this court to avoid its traditional judicial role, by suggesting the General Assembly should address the issues raised here concerning the state's wrongful death statutes. Presumably, the General Assembly intended that the courts would construe the statute in a manner which would give effect to the statute's purposes and objectives. *See O'Grady*, 654 S.W.2d at 911.

Finally, I would suggest that, in construing Arkansas's wrongful death statute in the manner thirty-one other states have done is also consistent with the Supreme Court's decision in *Roe* v. *Wade*, 410 U.S. 113 (1973). There, the Court found the compelling point in the state's legitimate interest of protecting potential life to be at viability, as the fetus, at that time, has the capability of meaningful life outside the mother's womb. Applying the rationale in *Roe*, the wrongful death statute should be construed

to include a viable fetus as a person entitled to protection. *See Werling*, 476 N.W.2d at 1056.

For the above reasons, I respectfully disagree with the majority court.

CORBIN and ROAF, JJ., join this dissent.