# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-2370

_____

JPMorgan Chase Bank, N.A.

*Appellee*

v.

Daniel L. Johnson; Susan D. Johnson

*Appellant*s

------------------------------

JPMorgan Chase Bank, N.A.

*Appellee*

v.

Tracy Lea Estes

*Appellant*

------------------------------

JPMorgan Chase Bank, N.A.

*Appellee*

v.

Tammy Renae Peeks

*Appellant*

_____

No. 12-2686

_____

Jere T. Jones; Teri Jones

*Plaintiffs - Appellants*

v.

JPMorgan Chase Bank, N.A.

*Defendant - Appellee*

_____

No. 12-3049

_____

Karen Rivera

*Plaintiff - Appellant*

v.

JPMorgan Chase Bank, N.A.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

_____

Submitted: January 15, 2013
Filed: July 9, 2013

_____

Before BYE, MELLOY, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

In these consolidated cases, we consider whether a national banking association chartered by the Office of the Comptroller of the Currency but not registered to do business with the Arkansas Secretary of State or the Arkansas Bank Department may use the non-judicial foreclosure procedure provided by the Arkansas Statutory Foreclosure Act. Ark. Code Ann. §§ 18-50-101–18-50-117. We conclude it may and affirm the dismissal[1] of the five cases before us.

I

In Arkansas, a mortgagee ("bank") may foreclose on real property by using one of two methods. First, it may file a complaint in Arkansas court alleging the mortgagor ("borrower") is in default on a promissory note. If it is successful, the bank may obtain a judgment allowing the borrower's property interest to be foreclosed and the property sold to satisfy the borrower's debt. See Ark. Code Ann. § 18-49-103(b). Second, the bank may use the Arkansas Statutory Foreclosure Act ("SFA"). Id. §§ 18-50-101–18-50-117. The SFA authorizes foreclosure proceedings without judicial supervision if, among other things, the bank properly notifies the borrower that he or she is in default and the bank intends to foreclose on and sell the property. Id. §§ 18-

---

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

50-103, 104; see Union Nat'l Bank of Ark. v. Nichols, 807 S.W.2d 36, 38 (Ark. 1991) ("The [SFA] procedure is designed to be effectuated without resorting to the state's court system . . . .").

The Arkansas General Assembly amended the SFA in 2003. Responding to an "emergency," it found

> foreign entities not authorized to do business in the State of Arkansas are availing themselves to [sic] the provisions of the Statutory Foreclosure Act of 1987; that often times it is to the detriment of Arkansas citizens; and that this act is immediately necessary because these entities should be authorized to do business in the State of Arkansas before being able to use the Statutory Foreclosure Act of 1987.

2003 Ark. Acts 1303 (S.B. 879). The bill added to Arkansas law the provision at issue in this case:

> No person, firm, company, association, fiduciary, or partnership, either domestic or foreign shall avail themselves of the procedures under this chapter unless authorized to do business in this state.

Ark. Code Ann. § 18-50-117. The provision applies if the mortgagee is a bank, savings and loan, or mortgage company. Id. §§ 18-50-116(c), 101(5) (defining "mortgage company").

In each of these consolidated cases, JPMorgan Chase Bank ("JPMorgan") attempted to use the SFA to foreclose on the borrower's home. Daniel and Susan Johnson, Tracy Estes, and Tammy Renae Peeks each filed a petition for relief under Chapter 13 of the Bankruptcy Code to halt the statutory foreclosure. See 11 U.S.C. § 362. Each debtor's repayment plan listed JPMorgan as a long-term secured creditor which was owed an arrearage of a stated figure. A debtor in a Chapter 13 case may cure a default on a debt for the debtor's home mortgage through the plan. Id. § 1322(b)(3). To confirm the plan and cure the default, the debtor must repay the

-4-

arrearage, the amount of which is "determined in accordance with the underlying agreement and applicable nonbankruptcy law." Id. § 1322(e). JPMorgan filed a plan confirmation objection in each case, arguing the debtors failed to include in their plans the fees and costs JPMorgan had incurred in pursuing the foreclosures, and as a result, the arrearage figure listed in the debtors' respective confirmation plans was too low. Thus, to calculate the proper arrearage amount, the bankruptcy court had to determine whether JPMorgan was entitled to use the SFA and claim the foreclosure fees from its use.

The bankruptcy court held a consolidated hearing regarding JPMorgan's objections. The parties stipulated that JPMorgan was not registered with the Arkansas Secretary of State as an entity authorized to conduct business in Arkansas, see Ark. Code Ann. § 4-27-1501, and was not registered with the Arkansas Bank Department as an out-of-state bank doing business in Arkansas. See id. § 23-48-1001. The bankruptcy court concluded this stipulation established JPMorgan was not "authorized to do business" in Arkansas. In re Johnson, 460 B.R. 234, 238-39 (Bankr. E.D. Ark. 2011). It found JPMorgan was not in compliance with the SFA, the debtors did not owe JPMorgan foreclosure fees and costs, and those fees and costs need not be included in the debtors' repayment plans for their plans to be confirmed. JPMorgan appealed.

In the fourth consolidated case, Jere T. Jones and Teri Jones filed a civil action against JPMorgan in Arkansas court. They requested a declaratory judgment JPMorgan was not in compliance with the SFA, as well as a temporary restraining order (TRO) enjoining the foreclosure of their property. The Arkansas court issued the TRO. JPMorgan then removed the case to federal court and moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

In the final case, Karen Rivera sought to recover damages and restitution on behalf of a class of persons subject to non-judicial foreclosure by JPMorgan. Her

complaint alleged, among other things, that JPMorgan's unauthorized use of the SFA violated the Arkansas Deceptive Trade Practices Act. Ark. Code Ann. § 4-88-101 *et seq*. JPMorgan moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Because the five cases turned on the same legal issue, the district court consolidated the three bankruptcy cases, Jones, and Rivera. After holding a hearing, the district court issued a memorandum opinion, accompanied by separate judgments, which reversed the bankruptcy court's decision, granted JPMorgan's motion for judgment on the pleadings in Jones, and granted JPMorgan's motion to dismiss in Rivera. First, the district court noted JPMorgan's stipulation was more limited than the bankruptcy court recognized. JPMorgan stipulated only that it was not registered to do business in Arkansas with the Secretary of State or the Bank Department. It did not stipulate it was not authorized to do business in Arkansas as § 18-50-117 required. Second, it reasoned a plain reading of § 18-50-117 allowed JPMorgan to acquire authorization to do business in Arkansas pursuant to state or federal law, rather than exclusively by state law. Third, and finally, it determined federal law authorized JPMorgan to do business in Arkansas. Therefore, the district court concluded JPMorgan met § 18-50-117's authorized-to-do-business requirement and could lawfully use the non-judicial foreclosure procedure the SFA provided. The homeowners appealed.

II

Our analysis proceeds in two parts: (1) whether an entity seeking to use the SFA may be "authorized to do business" in Arkansas only by virtue of state registration, or whether federal law may provide such authorization; and (2) if federal law may provide such authorization, whether the National Bank Act ("NBA") does, in fact, authorize JPMorgan to do business in Arkansas.

"As the second court of review in a bankruptcy appeal, we apply the same standard of review as the District Court, reviewing the Bankruptcy Court's legal conclusions de novo and its factual findings for clear error." In re Usery, 123 F.3d 1089, 1093 (8th Cir. 1997).[2]  We review a district court's grant of a motion for judgment on the pleadings and grant of a motion to dismiss for failure to state a claim de novo as well.  Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002) (quotation and citation omitted) (judgment on the pleadings); Detroit Gen. Retirement Sys. v. Medtronic, Inc., 621 F.3d 800, 804 (8th Cir. 2010) (failure to state a claim).

We look to Arkansas law to decide the merits of this diversity case.  See Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938).  Because the case presents a matter of first impression in Arkansas, we must predict, as best we can, how the Arkansas Supreme Court would decide it.  See Sloan v. Motorists Mut. Ins. Co., 368 F.3d 853, 856 (8th Cir. 2004) (citation omitted).  To do so, we consider "relevant state precedent, analogous decisions, considered dicta, and any other reliable data." HOK Sport, Inc. v. FC Des Moines, L.C., 495 F.3d 927, 935 (8th Cir. 2007) (internal quotation and citation omitted).  "[W]e are bound by [Arkansas's] rules of statutory construction" in our analysis.  Gershman v. Am. Cas. Co. of Reading, PA, 251 F.3d 1159, 1162 (8th Cir. 2001).  In Arkansas,

> [t]he basic rule of statutory construction is to give effect to the intent of the General Assembly.  In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language.  This court construes the

[2]Each party states the district court's opinion may provide "some persuasive weight" regarding the proper outcome.  See United States v. Foust (In re Foust), 52 F.3d 766, 768 (8th Cir. 1995).  This may be true when a district court reviews a bankruptcy court's interpretation of the bankruptcy code, a federal law.  Here, though, the district court interpreted a disputed provision of state law.  The Supreme Court has made clear appellate courts must review district court interpretations of state law de novo.  Salve Regina Coll. v. Russell, 499 U.S. 225, 239 (1991).

statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. However, this court will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. This court seeks to reconcile statutory provisions to make them consistent, harmonious, and sensible.

Mamo Transp., Inc. v. Williams, 289 S.W.3d 79, 83 (Ark. 2008) (citations omitted).

We first ask whether Ark. Code Ann. § 18-50-117 is ambiguous, for if it is not, our analysis need go no further. Burcham v. City of Van Buren, 954 S.W.2d 266, 269 (Ark. 1997). "A statute is ambiguous where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning." Yamaha Motor Corp., U.S.A. v. Richard's Honda Yamaha, 38 S.W.3d 356, 360 (Ark. 2001). Construing Ark. Code Ann. § 18-50-117 "just as it reads," Williams, 289 S.W.3d at 83, we initially observe the statute means exactly what it says—an entity must be "authorized to do business" in Arkansas to avail itself of the SFA. A requirement a bank register with a state official or state entity is not present in the statutory language. But neither is an explicit acknowledgment that federal law may authorize national banks to use the SFA. In short, the statute simply does not explain what a person or organization must do to become "authorized to do business" in Arkansas. This absence leaves reasonable minds to speculate regarding the meaning of the statute. This uncertainty renders § 18-50-117 ambiguous.

When, as here, a statute is ambiguous, and again seeking to determine legislative intent, Arkansas courts examine the whole act of which the statute is a part. Cent. & S. Cos. v. Weiss, 3 S.W.3d 294, 298 (Ark. 1999). They also consider "legislative history, the language, and the subject matter involved." Id. "[S]tatutes relating to the same subject are said to be *in pari materia* and should be read in a

harmonious manner, if possible." Rose v. Ark. State Plant Bd., 213 S.W.3d 607, 614 (Ark. 2005). Accordingly, we examine related provisions of the SFA and other Arkansas banking statutes to ascertain the General Assembly's intent.

Section 18-50-102(a) determines who may serve as a trustee in a non-judicial foreclosure proceeding. As initially enacted,[3] it allowed any "[b]ank or savings and loan authorized to do business under the laws of Arkansas or those of the United States" to be a trustee. Ark. Code Ann. § 18-50-102(a)(2) (2003) (emphasis added). Construing § 18-50-117 to allow only state law to authorize banks to do business in Arkansas would mean a national bank could be a trustee in a non-judicial foreclosure without prior registration, but simultaneously could not avail itself of the benefits of the SFA. The homeowners see no inconsistency here. We believe the homeowners misread the statute. Section 18-50-117 requires authorization for an entity to avail itself of "the procedures under this chapter," not just initiating a non-judicial foreclosure. Because the appointment of a trustee is part of the "procedures" contained in the SFA, the two provisions are inconsistent. Reading the statute in the manner JPMorgan suggests—in other words, an entity may initiate a non-judicial foreclosure pursuant to Arkansas law or the laws of the United States—produces this consistency because the phrase "authorized to do business" means the same thing in different parts of the statute. It is therefore a preferable interpretation. See Williams, 289 S.W.3d at 83.

Other Arkansas banking statutes lead to a similar conclusion. The Wingo Act provides a foreign corporation may become authorized to transact business in Arkansas by obtaining a certificate of authority from the Secretary of State. Ark. Code Ann. § 4-27-1501(a). Elsewhere, the Branching Act requires an out-of-state bank to file an application with the Arkansas Bank Commissioner before it may open

---

[3]The General Assembly amended § 18-50-102 effective July 27, 2011, but the amendment does not affect the outcome here.

a branch in Arkansas. Id. § 23-48-1001(a). These statutes, which contain express state certification requirements, demonstrate the General Assembly is capable of articulating a certification requirement when it desires one. Yet the SFA contains none. Arkansas courts presume the General Assembly has in mind previous statutes relating to the same subject matter when it enacts a new statute. See Cousins v. Dennis, 767 S.W.2d 296, 298 (Ark. 1989). And when the General Assembly has demonstrated the ability to include qualifying statutory language in a statute, but chooses not to do so in a particular statute, Arkansas courts infer the omission was deliberate and evidences a different legislative intent. See Bush v. State, 2 S.W.3d 761, 764 (Ark. 1999) (holding the legislature's approval of granting a defendant credit against his sentence in a statute governing post-sentence electronic monitoring by the Department of Corrections, but omission of that approval in a separate statute relating to pre-trial electronic monitoring, "is evidence that the legislature did not intend for credit to be given for electronic monitoring while a defendant is awaiting trial"); Chatelain v. Kelley, 910 S.W.2d 215, 219 (Ark. 1995) ("[T]he General Assembly knows how to include proper terminology or exclude it in accordance with its intent . . . ."), overruled on other grounds by Aka v. Jefferson Hosp. Ass'n, 42 S.W.3d 508 (Ark. 2001); Hales v. State, 771 S.W.2d 285, 286 (Ark. 1989). Applying these principles to the present matter, we must presume the General Assembly did not intend to include in § 18-50-117 the exclusive state registration it has insisted upon in other statutes.[4]

---

[4]The homeowners claim, "[w]hen it passed the 2003 amendment [to the SFA], the legislature knew what a certificate of authority meant." Appellants' Br. at 15. Assuming this statement is true, it is of little moment. Awareness of a statutory provision in a past statute does not suffice to require it in a present one. We also reject the homeowners' argument the district court improperly used a more general statute, the Wingo Act, to interpret a more specific statute, the SFA. See Ozark Gas Pipeline Corp. v. Ark. Pub. Serv. Comm'n, 29 S.W.3d 730, 736 (Ark. 2000) ("The rule is well settled that a general statute must yield when there is a more specific statute involving the particular matter."). The district court did no such thing. Rather, it used the Wingo Act simply as an example of the General Assembly's ability to communicate its intent.

We conclude that, if it were to rule on the matter, the Arkansas Supreme Court would hold registration with a state entity is not the exclusive means by which an entity may be authorized to do business in Arkansas. We now consider whether federal law authorizes JPMorgan to do business in Arkansas.

III

The district court concluded the National Bank Act ("NBA"), 12 U.S.C. § 21 *et seq.*, authorizes JPMorgan to conduct the business of banking in Arkansas. It further determined foreclosure constitutes a banking activity. The homeowners disagree. The NBA may allow JPMorgan to judicially foreclose in Arkansas, they argue, but it does not permit JPMorgan to statutorily foreclose.

The NBA regulates the activities of national banks. Congress has given the Office of the Comptroller of the Currency ("OCC") the responsibility of enforcing the NBA and overseeing national banks' operations. Id. §§ 24, 93(a). The parties agree JPMorgan is a national bank subject to the OCC's regulations. The NBA vests in nationally chartered banks enumerated powers and "all such incidental powers as shall be necessary to carry on the business of banking." Id. § 24 Seventh. The Supreme Court has repeatedly held "federal control shields national banking from unduly burdensome and duplicative state regulation." Watters v. Wachovia Bank, N.A., 550 U.S. 1, 11 (2007) (citing Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 10 (2003)). Although national banks are subject to state laws of general application that do not conflict with the NBA, Davis v. Elmira Savings Bank, 161 U.S. 275, 290 (1896), the grants of enumerated and incidental powers are not limited by—and in fact preempt—contrary state law. Barnett Bank of Marion Cnty., N.A. v. Nelson, 517 U.S. 25, 32 (1996).

One of the enumerated powers the NBA authorizes banks to engage in, subject to OCC regulation, is mortgage lending. 12 U.S.C. § 371(a); see Watters, 550 U.S. at 12. This provision, as part of an act of Congress related to the national banks,

applies to the states. 12 U.S.C. § 42. Accordingly, the NBA authorizes JPMorgan to conduct the business of banking, including mortgage lending, in Arkansas, notwithstanding any contrary Arkansas law.

It is also clear that the power to foreclose is incidental to the express power to make mortgage loans. An "incidental power" is one that is "closely related to an express power and is useful in carrying out the business of banking." First Nat'l Bank of E. Ark. v. Taylor, 907 F.2d 775, 777 (8th Cir. 1990). Incidental powers are not confined to activities deemed "essential" to the operations of national banks. Id. There is little doubt the power to foreclose is closely related to and useful in carrying out the business of banking. As the district court recognized, "[t]he power to engage in real estate lending would be rendered a nullity if national banks could not also foreclose when the borrower defaulted." JPMorgan Chase Bank, N.A. v. Johnson, 470 B.R. 829, 835 n.4 (E.D. Ark. 2012).

The homeowners acknowledge this fact, but nevertheless argue the power to statutorily foreclose is not incidental to the enumerated power to make mortgage loans. This is so, they claim, because "[t]he Comptroller has never promulgated a regulation that specifically includes the authority to use a state's statutory foreclosure statute as an incidental power to banking business." Appellants' Br. at 25 (emphasis removed). We cannot agree with this reasoning, for treating promulgation as a prerequisite converts incidental powers into enumerated ones and, as such, flatly contradicts the terms of the NBA. See 12 U.S.C. § 24 Seventh.

Finally, an OCC regulation identifies certain substantive bodies of law as "not inconsistent with the real estate lending powers of national banks." 12 C.F.R. §§ 34.4(b)(1) (contracts), (b)(5) (right to collect debts), (b)(6) (acquisition and transfer of property). The homeowners contend this regulation "exclud[es] these activities as incidental powers." Appellants' Br. at 26. Because the excluded powers of contracts, debt collection, and property transfer are at the core of the SFA, they argue, federal law does not allow national banks to statutorily foreclose. Again, we disagree because

the homeowners read the regulation incorrectly. Section 34.4(b) lists bodies of state law that are <u>not preempted</u> by federal law, to the extent they are not inconsistent with federal law as interpreted by the Supreme Court. The regulation does not say these bodies of law represent powers which are <u>not incidental</u> to the enumerated powers given to national banks. The homeowners confuse the two. To accept their position would mean national banks have the express power to make mortgage loans, but in doing so, may not enter into contracts, collect debts, or acquire and transfer property. These severe limitations would substantially interfere with a national bank's ability to execute an express power. Congress could hardly have intended such a result. <u>See</u> <u>Barnett Bank of Marion Cnty.</u>, 517 U.S. at 33 ("Congress would not want States to forbid, or to impair significantly, the exercise of a power that Congress explicitly granted.").

## IV

An entity may be authorized to do business in Arkansas for SFA purposes pursuant to either state or federal law. In JPMorgan's case, federal law provides such authorization. The district court correctly concluded JPMorgan is authorized to do business in Arkansas and may avail itself of the benefit of the SFA. The judgment of the district court is affirmed.[5]

_____

[5]JPMorgan also argues that § 18-50-117 violates the Dormant Commerce Clause and is preempted by the NBA. Because we resolve the case in JPMorgan's favor based on the statutory language itself, we do not consider these arguments.