


# SUPREME COURT OF ARKANSAS

**No.** CV–14–173

|  |  |
|---|---|
| ROBERT DICKINSON AND PAMELA DICKINSON, FOR THEMSELVES AND ALL RESIDENTS OF ARKANSAS WHO ARE SIMILARLY SITUATED<br>                                    PETITIONERS<br><br>V.<br><br><br>SUNTRUST NATIONAL MORTGAGE INC. AND FEDERAL NATIONAL MORTGAGE ASSOCIATION<br>                                    RESPONDENTS | **Opinion Delivered** December 11, 2014<br><br>CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT COURT EASTERN DISTRICT OF ARKANSAS<br>[NO. 3:12-cv-00112-BSM]<br><br>HONORABLE BRIAN S. MILLER, JUDGE<br><br>CERTIFIED QUESTION ANSWERED. |

**COURTNEY HUDSON GOODSON, Associate Justice**

This case presents the following certified question from the United States District Court for the Eastern District of Arkansas, Judge Brian Miller:

Whether the Federal National Mortgage Association satisfies the Statutory Foreclosure Act's authorized-to-do-business requirement, Ark. Code Ann. § 18-50-117, under 12 U.S.C. § 1716 *et seq.*, or other federal laws, or must the Federal National Mortgage Association satisfy Ark. Code Ann. § 18-50-117 by obtaining a certificate of authority in Arkansas prior to statutorily foreclosing on property in Arkansas?

Petitioners, Robert and Pamela Dickinson, ("the Dickinsons") contend that respondent, the Federal National Mortgage Association ("Fannie Mae"), may not institute foreclosure proceedings under the Statutory Foreclosure Act, codified at Ark. Code Ann. §§ 18-50-101 et seq., unless it is "authorized to do business in this state," which the Dickinsons claim requires Fannie Mae to obtain a certificate of authority from the Arkansas Secretary of State.

SLIP OPINION

Respondents argue that the statute allows any authorization, including authorization under federal law. We hold that the statute does contemplate authorization under federal law and that Fannie Mae's federal charter is sufficient to allow it to proceed under the Statutory Foreclosure Act.

This case stems from a statutory foreclosure proceeding instituted against the Dickinsons by respondent, SunTrust National Mortgage Inc. ("SunTrust"). According to the Dickinsons' complaint in this case, they have a note and a mortgage owned by Fannie Mae that is serviced by SunTrust. In early 2010, the Dickinsons fell behind on their payments, and in November 2010, SunTrust initiated a foreclosure action pursuant to the Statutory Foreclosure Act. In January 2011, shortly before the scheduled auction of their home, the Dickinsons filed suit against Fannie Mae and SunTrust in the circuit court of Green County, asserting causes of action for breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, and violations of the Arkansas Deceptive Trade Practices Act, codified at Ark. Code Ann. §§ 4-88-101 et seq. The circuit court granted the Dickinsons a temporary restraining order halting the statutory foreclosure sale of their home.

Thereafter, the Dickinsons filed an amended class-action complaint against Fannie Mae and SunTrust. Specifically, the complaint claimed that Fannie Mae, as the owner of the mortgage and the note, was not "authorized to do business" in Arkansas, as required by the Statutory Foreclosure Act, because it had failed to register to do business in Arkansas. The amended class-action complaint also pled causes of action against Fannie Mae for violations of the Arkansas Deceptive Trade Practices Act, unjust enrichment, and slander of title. The

SLIP OPINION

Dickinsons also reiterated their claims against SunTrust for violations of the Arkansas Deceptive Trade Practices Act and unjust enrichment.

The respondents removed the case to federal court. Following a decision by the Eighth Circuit Court of Appeals in *JPMorgan Chase Bank N.A. v. Johnson*, 719 F.3d 1010 (8th Cir. 2013), in which the Eighth Circuit held that the "authorized to do business" clause was satisfied by a federal law authorizing banks to do business in Arkansas, the respondents filed a motion to dismiss for failure to state a claim. The Dickinsons opposed the motion to dismiss and filed a cross-motion to certify the issues to this court. The district court granted the Dickinsons' motion and certified the above issue. We accepted certification.

The Statutory Foreclosure Act establishes a system of nonjudicial foreclosure proceedings as an alternative to judicial foreclosures. Because the Act is in derogation of the common law, its provisions must be strictly construed and complied with. *Henson v. Fleet Mortg. Co.*, 319 Ark. 419, 892 S.W.2d 250 (1995). The district court has asked for our interpretation of Arkansas Code Annotated section 18–50–117 (Repl. 2003), which provides,

> No person, firm, company, association, fiduciary, or partnership, either domestic or foreign, shall avail themselves of the procedures under this chapter unless *authorized to do business in this state*.

(Emphasis added.) The issue on certification is the meaning of the phrase "authorized to do business in this state." The Dickinsons argue that this phrase requires entities wishing to use the nonjudicial foreclosure procedures to register with and receive a certificate from the Arkansas Secretary of State. Respondents argue that authorization under federal law is sufficient.

3

The first issue is whether Ark. Code Ann. § 18–50–117 is ambiguous. A statute is ambiguous if it is open to two or more constructions, or if it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Voltage Vehicles v. Ark. Motor Vehicle Comm'n*, 2012 Ark. 386, 424 S.W.3d 281; *Yamaha Motor Corp, U.S.A. v. Richard's Honda Yamaha*, 344 Ark. 44, 38 S.W.3d 356 (2001). In this case, section 18–50–117 clearly contemplates that an entity must be "authorized to do business" in Arkansas to employ statutory foreclosure proceedings under the Statutory Foreclosure Act. However, the statutory language fails to provide direction as to what an entity must do to become "authorized to do business" in the state. As a result, we consider the statute to be ambiguous. When a statute is ambiguous, this court must interpret it according to legislative intent, and our review becomes an examination of the whole act. *Simpson v. Cavalry SPV I, LLC*, 2014 Ark. 363, 440 S.W.3d 335. In reviewing the Act in its entirety, this court will reconcile provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. *Id.*

In examining other sections of the Statutory Foreclosure Act to determine legislative intent for section 18–50–117, we note that section 18–50–102 also employs the phrase "authorized to do business." As initially enacted,[1] section 18–50–102 (1987) provided,

(a) A trustee of a deed of trust shall be any:

(2) Bank or savings and loan association authorized to do business under the

---

[1]The General Assembly has subsequently amended section 18–50–102 effective July 27, 2011, but no party has argued that the amendment applies to this case. Act of Mar. 31, 2011, No. 901 § 2, 2011 Ark. Acts 3615, 3617.

laws of Arkansas *or those of the United States*.

Ark. Code Ann. § 18-50-102(a)(2)(emphasis added). Section 18-50-102(a)(2) allows an entity to be a trustee under the Statutory Foreclosure Act if the trustee is authorized to do business under the laws of the United States. The Dickinsons, however, argue that authorization to do business under the laws of the United States is insufficient for purposes of section 18-50-117. Thus, if we were to adopt the Dickinsons' argument, an entity authorized to do business under the laws of the United States but not registered in Arkansas could be a trustee in a nonjudicial foreclosure under section 18-50-102 but simultaneously could not avail itself of the procedures of the Statutory Foreclosure Act according to section 18-50-117. However, the remaining sections of the Statutory Foreclosure Act contain provisions expressly directed at the trustee regarding, for example, publication of notice (Ark. Code Ann. § 18-50-105) and application of the proceeds of sale (Ark. Code Ann. § 18-50-109). To hold that an entity could be appointed trustee under section 18-50-102 but then prohibited from utilizing other sections of the statute governing actions of the trustee is an inconsistent and inharmonious reading of the provisions. Respondents' position, that section 18-50-117 allows authorization under the laws of the United States, is the most cogent interpretation because it affords a consistent meaning to the phrase "authorized to do business" in both sections of the statute.

The Eighth Circuit Court of Appeals has recently examined this issue and agreed that authorization under federal law is sufficient to comply with section 18-50-117. The Eighth Circuit compared the language of section 18-50-117 to section 18-50-102:

SLIP OPINION

Section 18-50-102(a) determines who may serve as a trustee in a non judicial foreclosure proceeding. As initially enacted, it allowed any "[b]ank or savings and loan authorized to do business under the laws of Arkansas *or those of the United States*" to be a trustee. Ark. Code Ann. § 18-50-102(a)(2) (2003) (emphasis added). Construing § 18-50-117 to allow only state law to authorize banks to do business in Arkansas would mean a national bank could be a trustee in a non judicial foreclosure without prior registration, but simultaneously could not avail itself of the benefits of the SFA. The homeowners see no inconsistency here. We believe the homeowners misread the statute. Section 18-50-117 requires authorization for an entity to avail itself of "the procedures under this chapter," not just initiating a non judicial foreclosure. Because the appointment of a trustee is part of the "procedures" contained in the SFA, the two provisions are inconsistent. Reading the statute in the manner JPMorgan suggests—in other words, an entity may initiate a non judicial foreclosure pursuant to Arkansas law or the laws of the United States—produces this consistency because the phrase "authorized to do business" means the same thing in different parts of the statute. It is therefore a preferable interpretation.

*JPMorgan Chase Bank, N.A. v. Johnson*, 719 F.3d 1010, 1016 (8th Cir. 2013). The Eighth

Circuit also looked to other related statutes to discern the legislative intent for section 18-50-

117:

Other Arkansas banking statutes lead to a similar conclusion. The Wingo Act provides a foreign corporation may become authorized to transact business in Arkansas by obtaining a certificate of authority from the Secretary of State. Ark. Code Ann. § 4-27-1501(a). Elsewhere, the Branching Act requires an out-of-state bank to file an application with the Arkansas Bank Commissioner before it may open a branch in Arkansas. *Id.* § 23-48-1001(a). These statutes, which contain express state certification requirements, demonstrate the General Assembly is capable of articulating a certification requirement when it desires one. Yet the SFA contains none. Arkansas courts presume the General Assembly has in mind previous statutes relating to the same subject matter when it enacts a new statute. *See Cousins v. Dennis*, 298 Ark. 310, 767 S.W.2d 296, 298 (1989). And when the General Assembly has demonstrated the ability to include qualifying statutory language in a statute, but chooses not to do so in a particular statute, Arkansas courts infer the omission was deliberate and evidences a different legislative intent. *See Bush v. State*, 338 Ark. 772, 2 S.W.3d 761, 764 (1999) (holding the legislature's approval of granting a defendant credit against his sentence in a statute governing post-sentence

electronic monitoring by the Department of Correction, but omission of that approval in a separate statute relating to pre-trial electronic monitoring, "is evidence that the legislature did not intend for credit to be given for electronic monitoring while a defendant is awaiting trial"); *Chatelain v. Kelley*, 322 Ark. 517, 910 S.W.2d 215, 219 (1995) ("[T]he General Assembly knows how to include proper terminology or exclude it in accordance with its intent...."), *overruled on other grounds by Aka v. Jefferson Hosp. Ass'n*, 344 Ark. 627, 42 S.W.3d 508 (2001); *Hales v. State*, 299 Ark. 93, 771 S.W.2d 285, 286 (1989). Applying these principles to the present matter, we must presume the General Assembly did not intend to include in § 18-50-117 the exclusive state registration it has insisted upon in other statutes.

*Id.* at 1016–17. Decisions of the federal circuit courts are not binding on this court, but we may choose to follow their rationale if we find it persuasive. *Larry Hobbs Farm Equip., Inc. v. CNH Am., LLC*, 375 Ark. 379, 291 S.W.3d 190 (2009). In this case, we find the Eighth Circuit's reasoning to be the correct interpretation of the statutory language.

Having established that section 18-50-117 does not require an entity to be licensed under Arkansas law, the only remaining issue in the certified question is whether Fannie Mae is authorized to do business in this state. The Dickinsons argue that the Federal National Mortgage Association Charter Act, 12 U.S.C. §§ 1716 et seq., does not provide Fannie Mae with enumerated or implied powers to conduct statutory foreclosures. The Dickinsons' reading is too narrow. The issue is not whether the charter grants Fannie Mae explicit powers to foreclose but whether it authorizes Fannie Mae to do business in this state, which it unquestionably does. According to the charter, Fannie Mae has the power to "purchase, service, sell, or otherwise deal in any mortgages" 12 U.S.C. § 1717. Additionally, the charter states that Fannie Mae is authorized to "conduct its business without regard to any qualification or similar statute in any State." 12 U.S.C. § 1723(a). The charter clearly

contemplates that Fannie Mae will engage in the business of dealing in mortgages in any state. Such authorization is sufficient to satisfy the requirements of section 18-50-117. Thus, Fannie Mae satisfies the Statutory Foreclosure Act's authorized-to-do-business requirement contained in section 18-50-117.

Certified question answered.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** Holding that 12 U.S.C. § 1716 et seq., the federal legislation that created the Federal National Mortgage Association, satisfies the authorized-to-do-business requirement embodied in Arkansas Code Annotated section 18-50-117, requires a fundamental misunderstanding of our system of federalism and does not comport with the rules of statutory construction.

As the Supreme Court noted, dual sovereignty is a defining feature of our nation's constitutional blueprint, and upon ratification of the Constitution, the States entered the Union "with their sovereignty intact." *Sossamon v. Texas*, ___ U.S. ___, 131 S. Ct. 1651, 1657 (2011) (quoting *Federal Maritime Comm'n v. S. Carolina State Ports Authority*, 535 U.S. 743, 751 (2002)). Absent federal preemption, as provided for by the Supremacy Clause of Article 6 of the United States Constitution, the sovereign state of Arkansas has the authority to regulate business within its borders. I am mindful that federal preemption can occur in three ways: "(1) express preemption, where Congress defines explicitly the extent to which its enactments preempt state law; (2) field preemption, where Congress's regulation of a field is so pervasive or the federal interest is so dominant that an intent to occupy the entire field

can be inferred; and (3) conflict preemption, where state law stands as an obstacle to the accomplishment of the full purposes and objectives of a federal statute." *GSS, LLC v. CenterPoint Energy Gas Transmission Co.*, 2014 Ark. 144, at 11, 432 S.W.3d 583, 590. Despite the majority's citation to convenient language from a section of the U.S. Code[1] that is otherwise unrelated to the issue of express preemption, in my view, there is nothing in the legislation that created the Federal National Mortgage Association to indicate that Congress

---

[1]The full section reads as follows:

§ 1723a. General powers of Government National Mortgage Association and Federal National Mortgage Association

(a) Seal, and other matters incident to operation

Each of the bodies corporate named in section 1717(a)(2) of this title shall have power to adopt, alter, and use a corporate seal, which shall be judicially noticed; to enter into and perform contracts, leases, cooperative agreements, or other transactions, on such terms as it may deem appropriate, with any agency or instrumentality of the United States, or with any State, Territory, or possession, or the Commonwealth of Puerto Rico, or with any political subdivision thereof, or with any person, firm, association, or corporation; to execute, in accordance with its bylaws, all instruments necessary or appropriate in the exercise of any of its powers; in its corporate name, to sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal, but no attachment, injunction, or other similar process, mesne or final, shall be issued against the property of the Association or against the Association with respect to its property; to conduct its business without regard to any qualification or similar statute in any State of the United States, including the District of Columbia, the Commonwealth of Puerto Rico, and the Territories and possessions of the United States; to lease, purchase, or acquire any property, real, personal, or mixed, or any interest therein, to hold, rent, maintain, modernize, renovate, improve, use, and operate such property, and to sell, for cash or credit, lease, or otherwise dispose of the same, at such time and in such manner as and to the extent that it may deem necessary or appropriate; to prescribe, repeal, and amend or modify, rules, regulations, or requirements governing the manner in which its general business may be conducted; to accept gifts or donations of services, or of property, real, personal, or mixed, tangible, or intangible, in aid of any of its purposes; and to do all things as are necessary or incidental to the proper management of its affairs and the proper conduct of its business.

intended to override Arkansas banking law.

In my view, the lack of federal preemption does not mean that the Federal National Mortgage Association cannot do business in Arkansas. It merely means that it is subject to some state regulation—the requirement that it obtain a certificate of authorization from the secretary of state.

I am likewise mindful of the federal court decision in *JPMorgan Chase Bank, N.A. v. Johnson*, 719 F.3d 1010 (8th Cir. 2013), which found that being "authorized by Congress to carry on business of banking throughout the United States" allowed the bank to utilize Arkansas's statutory foreclosure procedure. However, I do not find it persuasive. JPMorgan stipulated that it was not authorized to do business in accordance with section 18-50-117, but the federal court found that the National Bank Act satisfied the authorized-to-do-business requirement. I contend that a fairer interpretation of a national bank's authority to do business throughout the United States means only that such an institution does not need an Arkansas charter to conduct banking business. That interpretation is consistent with Arkansas banking law.[2] This analysis should apply to the Federal National Mortgage Association

---

[2]Arkansas Code Annotated section 23-45-102 embraces this interpretation:

(5)(A) "Bank" means a state bank or a national bank or an out-of-state state-chartered bank that has received a certificate of authority under § 23-48-1001.

Requiring a certificate of authority is not a particularly onerous requirement.

Arkansas Code Annotated section 23-48-1001 states:

(a) An out-of-state bank that desires to operate a branch location in the State of Arkansas, whether initial entry into the state is by an interstate merger transaction or establishment of

because it is simply a federally chartered, but otherwise independent financial corporation.

Given that Arkansas has retained its sovereignty in this area, the only entity that can "authorize" an entity to do business in this state, is the State of Arkansas itself. Accordingly, the phrase is not ambiguous in that the alternative interpretation exists not because the words of the statute are unclear.

The purpose of the rules of statutory construction is to give effect to the intent of the legislature. *State v. Colvin*, 2013 Ark. 203, 427 S.W.3d 635. While the so-called "first rule

---

a full-service branch, shall apply for a certificate of authority to transact banking business in this state. An applicant shall deliver an application to the Bank Commissioner for filing by the consummation of an interstate merger transaction or before establishment of a full-service branch. The application shall state:

(1) The name of the bank;

(2) The name of the state or country under whose law it is chartered;

(3) Its date of formation and period of duration;

(4) The street address of its principal office;

(5) The address of its registered office in this state and the name of its registered agent at that office; and

(6) The number and par value, if any, of shares of the bank's capital stock owned or to be owned by residents of this state.

(b) The bank shall deliver with the completed application a certificate of existence, or a document of similar import, duly authenticated by the bank supervisory agency which chartered the bank or other official having custody of the corporate records of banking institutions in the state or country under whose law it is chartered.

of statutory construction" is to construe a statute just as it reads, giving the words their ordinary and usually accepted meaning, *Smith v. Simes*, 2013 Ark. 477, 430 S.W.3d 690, interpretation of a statute should not be done in a vacuum. In construing any statute, we must place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect to be derived from the whole. *Colvin*, *supra*. Statutes relating to the same subject must be construed together and in harmony, if possible. *Id*. In my view, section 18-50-117 requires, at a minimum, an Arkansas certificate of authority before an entity can undertake statutory foreclosure of property in Arkansas.

I respectfully dissent.

*Emerson Poynter LLP*, by *Scott E. Poynter* and *Corey D. McGaha*; *The Cruz Law Firm*, by: *Kathy A. Cruz*; *Arnold, Batson, Turner & Turner*, by: *Todd M. Turner*; *Joel Hargis*; and *Annabelle Lee Patterson, PLC*, by: *Annabelle Lee Patterson*, for petitioners.

*Wright, Lindsey & Jennings LLP*, by: *Judy Simmons Henry*; and *Winston & Strawn LLP*, by: *Linda T. Coberly*, for respondents.

*Kutak Rock LLP*, by: *David L. Williams*; and *Bracewell & Giuliani LLP*, by: *Daniel S. Connolly*, *Rachel B. Goldman*, and *David J. Ball*, for amicus curiae JPMorgan Chase Bank, N.A.

*King & Spalding LLP*, by: *Michael J. Ciatti*, *Karen Schoen* and *Merritt E. McAlister*; and *Quattlebaum, Grooms, Tull & Burrow PLLC*, by: *E. B. Chiles IV*, for amicus curiae Federal Home Loan Mortgage Corporation.