Henry Eugene BUSH *v.* STATE of Arkansas

CR 99-355 2 S.W.3d 761

Supreme Court of Arkansas
Opinion delivered October 14, 1999

774

*William R. Simpson, Jr.*, Public Defender, and *Jeffrey A. Weber*, Deputy Public Defender, by: *Deborah R. Sallings*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Sandy Moll*, Ass't Att'y Gen., for appellee.

A<span>NNABELLE</span> C<span>LINTON</span> I<span>MBER</span>, Justice. Mr. Henry Eugene Bush was convicted of sexual assault in the first degree and sentenced to ten years' imprisonment. On appeal, Mr. Bush asserts that while awaiting trial he was "in custody" under an electronic monitoring program for a period of 325 days, and that the trial court erred when it refused to allow credit for that period against his ten-year sentence, pursuant to Ark. Code Ann. § 5-4-404 (Repl. 1997). We disagree and affirm the trial court.

Mr. Bush was arrested on December 18, 1997, and charged with rape under Ark. Code Ann. § 5-14-103 (Repl. 1997). The municipal court set bail at $10,000.00, conditioned upon Mr. Bush's enrollment in an electronic monitoring program. Mr. Bush enrolled in the program on December 26, 1997, and was released from jail on a $10,000 bond. Pursuant to the terms of the electronic monitoring program, Mr. Bush wore an electronic bracelet at all times and was not allowed to leave his home except

to go to his place of employment and to counseling. With prior permission from the monitoring official, he was allowed to go other places. Mr. Bush stayed on the program for 325 days and committed no violations.

On November 16, 1998, Mr. Bush entered a plea of no contest to a reduced charge of sexual assault in the first degree, with a recommended sentence of ten years' imprisonment. The trial judge accepted the plea and sentenced Mr. Bush to ten years in the Department of Correction. Mr. Bush then requested credit for the time he spent in custody awaiting trial. He argued that he was entitled to credit not only for the time he spent in jail (nine days), but also for the time he spent on home detention with electronic monitoring (325 days). The trial court refused to give Mr. Bush credit for the time that he spent on home detention, but did give him credit for the nine days that he actually spent in jail. Mr. Bush now appeals that ruling and asserts that he was in "custody" while under home detention with electronic monitoring, and that pursuant to section 5-4-404 he is entitled to credit against his ten-year sentence for time spent in custody.

Arkansas Code Annotated section 5-4-404 states that "if a defendant is held in custody for conduct that results in a sentence to imprisonment, the court shall credit the time spent in custody against the sentence." In this appeal, we are asked for the first time to construe the phrase "in custody" as it is used in section 5-4-404, and specifically with reference to a defendant who is released on bond, but subject to an electronic monitoring program while awaiting trial on criminal charges.

■ ■ The basic rule of statutory construction is to give effect to the intent of the General Assembly. *St. Paul Fire & Marine Ins. v. Griffin Constr.*, 338 Ark. 289, 993 S.W.2d 485 (1999); *Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998). When we construe a statute, we look first at the plain language of the statute and give the words their plain and ordinary meaning. *See ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998); *Ford Motor Credit Co. v. Ellison, supra*. If the language of a statute is ambiguous, we resort to other indicators of legislative intent, such as the subject matter of the statute,

the object to be accomplished, the purpose to be served, the remedy provided, legislative history, and other appropriate matters that throw light on the subject. *L.H. v. State*, 333 Ark. 613, 973 S.W.2d 477 (1998). In construing any statute, we place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect to be derived from the whole. *Lawhon Farm Servs. v. Brown*, 335 Ark. 272, 984 S.W.2d 1 (1998); *Hercules, Inc. v. Pledger*, 319 Ark. 702, 706, 894 S.W.2d 576, (1995). Statutes relating to the same subject must be construed together and in harmony, if possible. *See K.M. v. State*, 335 Ark. 85, 983 S.W.2d 93 (1998); *Johnson v. State*, 331 Ark. 421, 961 S.W.2d 764 (1998).

█ It is axiomatic that the meaning of certain words or phrases cannot be determined in isolation, but must be drawn from the context in which they are used. That principle certainly applies to the task of ascertaining what is meant by the phrase "in custody." For example, for purposes of entitlement to *Miranda* warnings, a person is "in custody" when he or she is deprived of freedom of action by formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *Solomon v. State,* 323 Ark. 178, 913 S.W.2d 288 (1996). However, for purposes of Rule 37 proceedings, a person is "in custody" only when he or she is actually physically incarcerated. *See Bohanan v. State,* 336 Ark. 367, 985 S.W.2d 708 (1999). Although the phrase " in custody" has been construed in other contexts, that phrase has not been specifically construed in connection with its use in Ark. Code Ann. § 5-4-404. Under these circumstances, where the statutory language is ambiguous in that it is context-dependent, we must resort to other evidence of legislative intent to determine its meaning.

Mr. Bush argues that electronic monitoring falls within the phrase "in custody" as it is used in Ark. Code Ann. § 5-4-404, because a person can be charged with absconding for leaving an electronically monitored area. Absconding is defined under Ark. Code Ann. § 5-54-131 (Supp. 1999), which states that:

> (a) A person commits the offense of absconding if the person knowingly:

(1) Leaves a designated residence while under house arrest ordered as a condition of the person's release on a criminal offense by a court of competent jurisdiction; or

(2) Leaves a designated area while wearing an electronic monitoring device ordered as a condition of the person's release on a criminal offense by a:

 (A) Court of competent jurisdiction; or

 (B)(i) Sheriff or his designee.
 (ii) A determination by a sheriff or his designee placing a person on electronic monitoring remains valid until changed by the sheriff or his designee.

(b) The offense of absconding is a Class D felony.

According to Mr. Bush, the existence of this offense is evidence of a legislative intent that the phrase "in custody" in section 5-4-404 includes electronic monitoring. We disagree.

██ The enactment of Ark. Code Ann. § 5-54-131 is actually evidence of a contrary legislative intent. The separate offenses of first-, second-, and third-degree escape were in existence prior to the enactment in 1993 of a statute creating the offense of absconding. *See* Act 473 of 1993, codified at Ark. Code Ann. § 5-54-131; *see also* Ark. Code Ann. § 5-54-110 (Repl. 1997)(first-degree escape); Ark. Code Ann. § 5-54-111 (Repl. 1997)(second-degree escape); and Ark. Code Ann. § 5-54-112 (Repl. 1997)(third-degree escape). These escape offenses are included under Title 5, Chapter 54, of the Arkansas Code, entitled "Obstructing Governmental Operations." For purposes of that chapter, the term "custody" is defined in Ark. Code Ann. § 5-54-101(2) (Repl. 1997) as:

> actual or constructive restraint by a law enforcement officer pursuant to an arrest or a court order but does not include detention in a correctional facility, juvenile training school, or the Arkansas State Hospital.

Also for purposes of that chapter, the term "escape" is defined as the "unauthorized departure of a person from custody or a correctional facility." *See* Ark. Code Ann. § 5-54-101(3) (Repl. 1997). By the enactment in 1993 of a separate offense of absconding, the

legislature indicated that the crime of leaving an electronically monitored area was different from the already extant crimes of first-, second-, and third-degree escape. In other words, leaving an electronically monitored area was not escape from custody as defined by Ark. Code Ann. § 5-54-101. We therefore conclude that custody and electronic monitoring were intended by the legislature to be separate and distinct circumstances.[1]

■ Moreover, Ark. Code Ann. § 16-93-708 (Supp. 1999) specifically provides that the Department of Correction must award a defendant credit against his sentence for time spent in a home-detention program with electronic monitoring. The absence of a similar provision extending credit for electronic monitoring prior to commitment to the custody of the Department of Correction is evidence that the legislature did not intend for credit to be given for electronic monitoring while a defendant is awaiting trial.

■ Similarly, other statutes that address pretrial proceedings in criminal cases mention only two options for a defendant awaiting trial — he or she may be released on bond or remain in custody. *See* Ark. Code Ann. § 16-85-206 (1987)(Bail During Periods of Adjournment); Ark. Code Ann. §16-85-513(b) (1987)(Indictment); Ark. Code Ann. § 16-85-706 (1987)(Motion to Set Aside Indictment); Ark. Code Ann. § 16-89-101 (1987)(Trial Times and Postponements); Ark. Code Ann. § 16-89-103 (Supp. 1999)(Presence of Defendant); Ark. Code Ann. § 16-89-106 (1987)(Defendant on Bail for Felony Indictment); Ark. Code Ann. § 17-19-101 (Repl. 1995)(Definitions — defining Bail Bond as "a bond for a specified monetary amount . . . as security for subsequent court appearance of the defendant upon his release from *actual custody* pending the appearance."(Emphasis added.)). There is a conspicuous absence of any language suggesting a circumstance other than bond or actual custody, thereby manifesting a legislative intent that the phrase "in custody" applies

---

[1] This conclusion is also supported by the following Arkansas Code Revision Commission note to Ark. Code Ann. §§ 5-54-101, *et seq:* "References to "this chapter" in §§ 5-54-101 – 5-54-130 may not apply to § 5-54-131 [the absconding statute] which was enacted subsequently."

only to circumstances where the individual is not released on bond.

The United States Supreme Court reached a similar conclusion in *Reno v. Koray*, 515 U.S. 50 (1995). *Koray* involved the interpretation of 18 U.S.C. § 3585(b), which provided that a defendant must be "given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences." *Id*. Mr. Koray asserted that the time he spent in a treatment center pursuant to a court order prior to sentencing was time spent in "official detention" and should be credited toward time on his prison sentence. *Id*. The Court construed the phrase "official detention" in light of the Bail Reform Act of 1984, which allows credit for presentence restraints on liberty. *Id*. Because that act provides a court with two choices, releasing a defendant on bail, or ordering the defendant detained without bail, the Court concluded that a defendant suffers a "detention" only when committed to the Attorney General's custody, and that a defendant admitted to bail, even on restrictive conditions, is "released." *Id*. Mr. Koray was released on bail, subject to the condition that he enter the treatment facility. Accordingly, the Court found that he had not been "detained" and was therefore not entitled to credit for his time in the treatment facility. *Id*.

While a defendant may be required to submit to home detention or monitoring as a condition of bond, the fact remains that the defendant is released from the constant supervision of a penal institution. As pointed out by the Supreme Court in *Koray, supra*, the distinction between being released on bond and being held in a penal facility is evident in terms of the control exercised by the penal facility. A defendant released on bail is not subject to the rigorous controls of a penal facility, which include disciplinary procedures, summary reassignments, and a total loss of privacy. In *State v. Ramos*, 561 N.E.2d 643 (Ill. 1990), the Illinois Supreme Court held that the phrase "in custody" as used in a statute providing for jail time credit does not include home detention while a defendant is released on bond because:

> [a]n offender who is detained at home is not subject to the regimentation of penal institutions and, once inside the residence,

enjoys unrestricted freedom of activity, movement, and association. Furthermore, a defendant confined to his residence does not suffer the same surveillance and lack of privacy associated with becoming a member of an incarcerated population.

■ This contrast is further illustrated by the plight of those who must endure incarceration in a prison facility as a consequence of indigency or denial of bond. While some jurisdictions have focused on the degree of confinement or restriction and awarded credit on a case-by-case basis, we decline to do so here. *See, e.g., Dedo v. State,* 680 A.2d 464 (Md. 1996); *State v. Platt,* 610 A.2d 1398 (Vt. 1992); *see also* Lee R. Russ, Annotation, *Defendant's Right To Credit for Time Spent in Halfway House, Rehabilitation Center, or Similar Restrictive Environment As a Condition of Pretrial Release,* 29 A.L.R. 240 (1984). Such an approach is not only time-consuming and fact-intensive, but is also likely to result in disparate treatment. *See Koray, supra.*

■ Based upon the legislature's enactment of the absconding statute, Ark. Code Ann. § 5-54-131, that does not equate electronic monitoring with custody under Ark. Code Ann. § 5-54-101(2), and based upon other pretrial statutes that mention only two options for defendants awaiting trial, to be released on bail or to remain in custody, we conclude that the phrase "in custody" for purposes of Ark. Code Ann. § 5-4-404 should be construed to exclude defendants released on bond, even when electronic monitoring is a condition of bond. We, therefore, hold that credit for time spent in custody under Ark. Code Ann. § 5-4-404 is available only to those persons who remain in the custody of a penal institution. Defendants released on bond but subject to an electronic monitoring program are nonetheless released and, thus, are not entitled to credit against a sentence of imprisonment for time spent under such programs. This interpretation is bolstered by the legislature's silence with respect to electronic monitoring while a defendant awaits trial, in the face of a specific provision for such credit after a defendant is committed to the custody of the Department of Correction. *See* Ark. Code Ann. § 16-93-708. We believe this statutory framework is compatible not only with statutory indications of legislative intent on this issue, but also with principles of fundamental fairness.

 Many other jurisdictions that have considered this issue have also concluded that pretrial home detention or electronic monitoring is not equivalent to being "in custody" for purposes of sentencing credit. *See Ramos, supra; People v. Thompson,* 528 N.E.2d 1016 (Ill. App. 1988); *State v. Wilkinson,* 539 N.W.2d 249 (Minn. App. 1995); *State v. Faulkner,* 657 N.E.2d 602 (Ohio App. 1995); *see also,* Mark E. Burns, *Electronic Home Detention: New Sentencing Alternative Demands Uniform Standards,* 18 J. CONTEMP. L. 75 (1992). Likewise, we conclude that electronic monitoring does not constitute being held in custody for purposes of credit against a sentence of imprisonment under Ark. Code Ann. § 5-4-404 where the individual has been released on bond. Because Mr. Bush was released on bond, the trial court correctly ruled that he was not entitled to credit against his ten-year sentence for the time he spent on electronic monitoring at his residence.

Affirmed.