The Honorable Dean Elliott State Representative 136 Apple Blossom Loop Maumelle, Arkansas 72113-6031
Dear Representative Elliott:
This is in response to your request for my opinion on the following question:
 Is it an unlawful delegation of power to grant the Executive Director of Central Arkansas Transit Authority ("CATA") joint decision-making power with the mayors of Little Rock and North Little Rock and the Pulaski County Judge regarding the expenditure of funds from a Bridge Maintenance and Enhancement Trust Fund (the "Trust Fund")?
In your request, you have summarized the factual background and your specific concern as follows:
 I am enclosing a copy of a proposed Interlocal Cooperation Agreement [the "Agreement"] which contemplates the donation of the Little Rock Main Street bridge across the Arkansas River to Pulaski County and provides for the costs of acquisition, the renovation, operation, maintenance and enhancement of the bridge to be borne by the parties to this agreement (Pulaski County, the city of Little Rock, the city of North Little Rock, and Central Arkansas Transit Authority). Under this proposed agreement each of the parties agrees to make an annual contribution to a trust fund to be used for such purposes.
 . . . One of the questions raised concerns the expenditure of the trust funds for the acquisition, renovation, enhancement, maintenance and operation of the bridge. Section 2.4 of the agreement provides that any such expenditures will be made only with agreement of all parties to the agreement. It would appear that this provision raises the constitutional issue of unlawful delegation of authority since it gives a nongovernmental entity, CATA, the ability and authority to control the expenditure of public funds.
RESPONSE
In my opinion, CATA's proposed authorization of expenditures from the Trust Fund does not constitute an unlawful delegation of governmental powers. Rather, I consider CATA a quasi-governmental entity authorized to participate in an interlocal agreement of the sort at issue pursuant to the Interlocal Cooperation Act, 25-10-101 et seq.
In Ark. Op. Att'y Gen. No. 99-213, I offered the following summary of the "unlawful delegation" doctrine as it applies to state action:
 The "unlawful delegation" doctrine arises from the "separation of powers" mandated by the Arkansas Constitution:
 The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another.
 No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.
Arkansas Constitution, art. 4, §§ 1 and 2.
 Article 4 of the Arkansas Constitution contains the so-called" separation of powers" doctrine, which requires that the three branches of government (legislative, executive, and judicial) remain separate and distinct, and that such separation be strictly enforced. See generally, Oates v. Rogers, 201 Ark. 335, 144 S.W.2d 437 (1940). The doctrine has long been a part of Arkansas' form of government. Under the classic division of powers, the legislature makes the laws and appropriates state revenues, the executive administers the law and expends the appropriations, and the judiciary interprets the law. See Chaffin v. Arkansas Game and Fish Commission, 297 Ark. 431, 757 S.W.2d 950 (1988), Federal Express Corp. v. Skelton, 265 Ark. 187, 578 S.W.2d 1 (1979), and Hooker v. Parkin, 235 Ark. 218, 357 S.W.2d 534
(1962).
As a general proposition, local governments likewise observe the separation of powers. See, e.g., Ark. Const. amend. LV, § 1(a) and A.C.A. § 14-14-502 (defining separate branches of county government); A.C.A. §§ 14-14-801 and -802 (charging the quorum courts with legislative authority, including the power of appropriation); A.C.A. § 14-14-907
(specifically addressing county appropriation ordinances); A.C.A. §14-43-502 (charging the city council with general legislative authority, including the management and control of finances); A.C.A. §§ 14-55-201
through -203 (charging the aldermen of any municipality with the duty to approve appropriations); Ark. Const. amend. LV, § 3 (charging the county judge with the duty to disburse appropriations); A.C.A. § 14-43-504
(charging the mayor of a city of the first class with general executive authority); A.C.A. § 14-47-116 (charging the mayor in a city with a city manager form of government with the responsibility to execute all instruments approved by the board of directors). However, with respect to cities, the separation of powers is not invariably observed. As I noted in Ark. Op. Att'y Gen. No. 99-159:
 It has been stated that: "[n]ot all ordinances enacted by City Councils come under the head of `municipal legislation.' City governments in Arkansas know no such complete separation of powers as would automatically classify all aldermanic activities as legislative in character." Scroggins v. Kerr, 217 Ark. 137, 228 S.W.2d 995 (1950). It has been noted that: "[C]ity councils often enact resolutions and ordinances that are administrative or executive in character." Id. at 143.
Even assuming the separation of powers doctrine applied rigidly to local governmental action, I do not believe it would be violated in this instance. As reflected above, your primary concern is that the Agreement "gives a nongovernmental entity, CATA, the ability and authority to control the expenditure of public funds." However, I believe this conclusion is based on a mischaracterization of CATA's status. I appreciate that CATA, unlike the other parties to the proposed Agreement, is not a municipal corporation. However, this does not mean that CATA is a "nongovernmental entity," as you have characterized it in your request. As a "regional authority," CATA clearly qualifies as a "public transit system" as defined at A.C.A. § 14-334-102(4). In including within this definition any transit system "owned and operated by any . . . other governmental agency," the statute acknowledges that CATA itself qualifies as a "governmental agency." Accordingly, every public transit system is statutorily designated a "public corporation," whose operations "are declared to be public and governmental functions, exercised for a public purpose and matters of public necessity." A.C.A. § 14-334-104.
The purpose of the Interlocal Cooperation Act is statutorily defined as being "to permit local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities on a basis of mutual advantage." A.C.A. § 25-20-102.[1] In my opinion, CATA clearly qualifies as a "local governmental unit" of the sort the legislation was designed to serve. Nevertheless, one might debate whether CATA falls squarely within the Act's definition of a "public agency" authorized to participate in an interlocal cooperation agreement:
 "Public agency" means any school district, any political subdivision of this state, any agency of the state government or of the United States, any political subdivision of another state, water districts created under the provisions of 14-116-101 et seq., and fire departments organized under the laws of this state if the fire departments offer fire protection services to unincorporated areas and have received approval by their quorum courts for participation in an interlocal cooperation agreement.
A.C.A. § 25-20-103(1). Arguably, as a "public corporation" by operation of state law, CATA might be characterized as an "agency of the state," thus locating it squarely within this definition. However, even if not, given the general tenor of the Interlocal Cooperation Act, I believe the legislature clearly intended to include public organizations like CATA within the scope of its coverage. It is an accepted rule of statutory construction that when a word in a statute is omitted or misused, it is the duty of the courts to disregard the error if the context plainly indicates the legislative intent. Johnson v. U.S. Gypsum Co.,217 Ark. 264, 229 S.W.2d 671 (1950). It has also been stated that the court, in construing a statute, may reconcile two conflicting descriptions by striking out words in one so as to conform to the other. Heinemann v.Sweatt, 130 Ark. 70, 196 S.W. 931 (1917). See also Murphy v. Cook,202 Ark. 1069, 155 S.W.2d 330 (1941) (holding that where intent was obvious, court would substitute 50,000 for 40,000, as the latter figure was merely a typographical error); Sutherland, Statutory Construction, § 47.37 (5th ed). Moreover, as the Supreme Court observed in Bush v. State,338 Ark. 772, 2 S.W.3d 761 (1999): "It is axiomatic that the meaning of certain words or phrases cannot be determined in isolation, but must be drawn from the context in which they are used." In the present case, these principles lead me to focus on the Act's statement of an intention to benefit "local governmental units," A.C.A. § 25-20-102 — a term I believe includes CATA — by authorizing cooperative projects among them. Of necessity, such cooperation will frequently entail a pooling of resources and group decision-making regarding how those resources will be allocated. The Agreement provides for precisely such cooperation among public entities and consequently is not objectionable as an unlawful delegation of powers.
Finally, I should note that this opinion is not the approval of the Agreement dictated by A.C.A. § 25-20-104(f). I interpret your request as being limited to the constitutional issue discussed above. I assume the Agreement will be submitted for statutory approval at a later date if the parties elect to proceed.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] I am informed that CATA was itself created in 1986 by an interlocal agreement among six central Arkansas communities.