Kurtis BURNETTE *v.* STATE of Arkansas

CR 03-243                                          127 S.W.3d 479

Supreme Court of Arkansas
Opinion delivered October 30, 2003

*William R. Simpson, Jr.*, Public Defender, by: *Erin Vinett*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Linda Blackburn*, Ass't Att'y Gen., for appellee.

Annabelle Clinton Imber, Associate Justice. Appellant Kurtis Burnette was convicted of endangering the welfare of a child in the first degree after a four-year-old child in his care was found standing in the center of a busy street in Little Rock. On appeal, he argues that the State not only failed to prove he acted purposely, but also failed to prove that he "deserted" the four-year-old child as contemplated by Ark. Code Ann. § 5-2-203 (Repl. 1997). Because there is insufficient evidence that Burnette "deserted" the minor child, we reverse and remand.

On March 22, 2002, Iceola Raglin was at home with her boyfriend, Kurtis Burnette, and her two grandchildren, six-year-old Rochelle Raglin and four-year-old Ariandre Jackson. That afternoon, Raglin's daughter, Angela Jackson, called and asked for a ride home from work. Raglin borrowed Burnette's car to go and pick up her daughter and bring her back to the house. On the way back, however, Burnette's car broke down and Raglin called Burnette for help. In response to the call, Burnette paid a neighbor to give him a ride to Raglin's location. Burnette did not take the children with him; instead, he left both of them at home alone. Within thirty minutes of Burnette leaving the house, Raglin returned home.

While at home with his six-year-old cousin, four-year-old Ariandre Jackson (A.J.) managed to leave the house and wander into traffic on Roosevelt Road. At that time, Roy Henderson was driving westbound on Roosevelt Road, and as he crossed Confederate Boulevard, Henderson noticed A.J. standing in the middle of the road. He immediately tapped his brakes, straddled the lane dividers, flashed his high beams, and engaged the emergency flashers to warn other traffic about the small child. After stopping,

Henderson attempted to learn A.J.'s name, age, or place of residence; but, the child appeared to be confused. Witnesses also testified that he was wet and soiled. Henderson took A.J. to a nearby Kroger grocery store to look for his parents. After failing to find the child's parents, Henderson finally called the Little Rock Police Department.

Responding officers took custody of A.J. and transported him to the police station. Meanwhile, Officer Rick Harmon circulated the area looking for the child's parents. When the officer saw Iceola Raglin with a concerned look on her face, he asked if she was missing a child. Raglin responded that she was looking for her grandson A.J. Later, Officer Harmon went to Raglin's home and asked Burnette to go to the police station for the purpose of giving a statement. Burnette complied and gave a consensual, taped statement.

On April 11, 2002, the State filed a felony information against Burnette charging him with two counts of endangering the welfare of a minor in the first degree. At a bench trial on October 17, 2002, the court directed a verdict in Burnette's favor on the charge related to Rochelle Raglin. However, the court found Burnette guilty of endangering the welfare of a minor in the first degree with respect to A.J. The court sentenced Burnette to two years' probation and a $150 fine.

Burnette now appeals his conviction and sentence, arguing that the trial court erred in denying his motion for a directed verdict. Burnette contends that he did not "desert" A.J. when he left him at home alone for approximately thirty minutes. Consequently, according to Burnette, the State failed to provide sufficient evidence of desertion. He also argues that the State failed to submit proof of the required purposeful mental state as to each element of the offense.

██ With regard to whether there is sufficient evidence of desertion, Burnette asserts that the term "desert" as used in the statute "carries with it a state of intended permanence." The State, on the other hand, contends that the term "desert" includes leaving a child alone temporarily. We strictly construe criminal statues, and resolve any doubts in favor of the defendant. *Stivers v. State,* 354 Ark. 140, 118 S.W.3d 558 (2003). The basic rule of statutory construction is to give effect to the intent of the legislature. *Id.* Words are given their ordinary and usually accepted

meaning in common language, and if the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion to resort to rules of statutory interpretation. *Id.* Additionally, in construing any statute, this court places it beside other statutes relevant to the subject matter in question and ascribes meaning and effect to be derived from the whole. *Id.*

The term "desert" has more than one definition. For example Burnette puts forth the following definition:

> *Desert.* To leave or quit with an intention to cause permanent separation; to forsake utterly; to abandon. It is essentially willful in nature.

*Black's Law Dictionary* 446 (6th ed. 1990); whereas, the State submits the following:

> *Desert.* 1. To leave empty or alone; abandon; 2. To withdraw from, especially in spite of a responsibility of duty, forsake; 3. To abandon in violation of orders or oath.

*The American Heritage Dictionary of the English Language* (4th Ed. 2000). Neither definition is dispositive.

■■ We also look to the commentary to the Arkansas Criminal Code for guidance in interpreting a statutory phrase. We will adhere to the commentary unless it is contrary to the settled policy of the state. *Leheny v. State,* 307 Ark. 29, 818 S.W.2d 236 (1991). The pertinent section of the commentary reads:

> Endangering the welfare of a minor in the first degree] protects the child under age 10 from abandonment under circumstances likely to endanger his life or seriously injure him . . . Although the designation of age 10 is arbitrary, it does take into account in a crude sense the likely ability of the child to care for himself and seek the aid of others.

Original Commentary to Ark. Code Ann. § 5-27-203 (Repl. 1997). This commentary suggests that the General Assembly intended to criminalize conduct where a person charged with the care of a child leaves that child with the intent to abandon or remain away from the child.

█ Furthermore, the meaning of the term "desert" may be gleaned by referring to the affirmative defense set out in section 5-27-203, which provides as follows:

> (c)(1) It shall be an affirmative defense to prosecution under this section that the parent voluntarily delivered the child to and left the child with, or voluntarily arranged for another person to deliver the child to and leave the child with, a medical provider or law enforcement agency as provided in §§ 9-34-201 et seq.

Ark. Code Ann. § 5-27-203(c)(1) (Repl. 1997). Indeed the cross reference to Ark. Code Ann. § 9-34-201, et seq., reflects that section 5-27-203 is aimed at protecting children from being deserted by a person charged with the child's care who "does not express an intent to return for the child." *See* Ark. Code Ann. § 9-34-202(a) (Repl. 2002) (allowing any medical provider or law enforcement agency to take possession of a child who is thirty (30) days old or younger if the child is left with or voluntarily delivered to the medical provider or law enforcement agency by the child's parent who does not express an intent to return for the child).

██ At best, the term "desert" as used in Ark. Code Ann. section 5-27-203 is ambiguous. Based upon our review of the various dictionary definitions of the term, the statutory commentary, and other relevant sections of the criminal code, as well as the requirement that criminal statutes be strictly construed with any doubts resolved in favor of the defendant, we must conclude that the term "desert" requires the State to show that the defendant had no intent to return for the child.[1] Thus, it is clear in the instant case that the State failed to provide any evidence that Burnette intended to leave the child permanently. Accordingly, the circuit court erred in denying Burnette's directed-verdict motion. Having made this determination, we need not address Burnette's contention that the State failed to submit proof of the required purposeful mental state as to each element of the offense.

---

[1] Contrary to the dissent's assertion regarding babysitters and teachers, the crucial issue is whether a defendant who is charged with a child's care, albeit temporarily, leaves that child with no intent to return.

Based on Burnette's request below that the "court should consider the lesser of this, . . . that is endangering the welfare of a minor, second degree," we reverse and remand.[2]

Reversed and remanded.

THORNTON, J., dissents.

BROWN, J., not participating.

RAY THORNTON, Justice, dissenting. I respectfully disagree with the majority's decision that Mr. Burnette did not desert the child. The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Bush v. State,* 338 Ark. 772, 2 S.W.3d 761 (1999). When the appellate court construes a statute, it looks first at the plain language of the statute and gives the words their plain and ordinary meaning. *Id.*

Mr. Burnett argues that *desert* means to abandon permanently and the majority agrees. To the contrary, I believe that the word *desert* means to abandon during a time that a duty to protect the child is in existence, and that the clear intention of the statute was to protect against a breach of that duty. The statute does not require a time frame for the act of desertion, nor does the plain and ordinary meaning of the statute appear to relate only to permanent abandonment. It seems clear to me that the legislative intent is to protect children from being left alone in potentially dangerous settings or situations, without regard to time. Without legislative expression that a permanent abandonment was required to constitute desertion, we should construe *desert* to mean simply, abandon under circumstances where the welfare of the child is endangered, without regard to duration of the abandonment.

Furthermore, the original commentary to Ark. Code Ann. § 5-27-202 (1987) states that §§ 5-27-201—203 (1987) were intended to "define the offenses of endangering the welfare of a minor in the first degree." *Id.* The commentary goes on to state that "It should be observed that the section applies not only to parents and guardians, but also to other relatives, babysitters, or even teachers, when such persons are charged with the care of the

---

[2] We do not reach the issue of whether endangering the welfare of a minor — second degree, is a lesser-included offense of endangering the welfare of a minor — first degree. *See* Ark. Code Ann. §§ 5-27-203, 204 (Repl. 1997).

child or incompetent." *Id.* In light of the fact that babysitters and teachers are charged only with the temporary care of a child, it is clear that this statute was intended by the legislature to apply to acts of abandonment endangering the well-being of a child without regard to the duration of the abandonment.

I respectfully dissent.