COURTNEY HUDSON GOODSON, Associate Justice |, This case presents the following certified question from the United States District Court for the Eastern District of Arkansas, Judge Brian Miller: Whether the Federal National Mortgage Association satisfies the Statutory Foreclosure Act’s authorized-to-do-business requirement, Ark. Code Ann. § 18-50-117, under 12 U.S.C. § 1716 et seq., or other federal laws, or must the Federal National Mortgage Association satisfy Ark. Code Ann. § 18-50-117 by obtaining a certificate of authority in Arkansas prior to statutorily foreclosing on property in Arkansas? Petitioners, Robert and Pamela Dickinson, (“the Dickinsons”) contend that respondent, the Federal National Mortgage Association (“Fannie Mae”), may not institute foreclosure proceedings under the Statutory Foreclosure Act, codified at Ark. Code Ann. §§ 18-50-101 et seq., unless it is “authorized to do business in this state,” which the Dickinsons claim requires Fannie Mae to obtain a certificate of authority from the Arkansas Secretary of State. ^Respondents argue that the statute allows any authorization, including authorization under federal law. We hold that the statute does contemplate authorization under federal law and that Fannie Mae’s federal charter is sufficient to allow it to proceed under the Statutory Foreclosure Act. This case stems from a statutory foreclosure proceeding instituted against the Dickinsons by respondent, SunTrust National Mortgage Inc. (“SunTrust”). According to the Dickinsons’ complaint in this case, they have a note and a mortgage owned by Fannie Mae that is serviced by SunTrust. In early 2010, the Dickinsons fell behind on their payments, and in November 2010, SunTrust initiated a foreclosure action pursuant to the Statutory Foreclosure Act. In January 2011, shortly before the scheduled auction of their home, the Dickinsons filed suit against Fannie Mae and SunTrust in the circuit court of Green County, asserting causes of action for breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, and violations of the Arkansas Deceptive Trade Practices Act, codified at Ark. Code Ann. §§ 4-88-101 et seq. The circuit court granted the Dickinsons a temporary restraining order halting the statutory foreclosure sale of their home. Thereafter, the Dickinsons filed an amended class-action complaint against Fannie Mae and SunTrust. Specifically, the complaint claimed that Fannie Mae, as the owner of the mortgage and the note, was not “authorized to do business” in Arkansas, as required by the Statutory Foreclosure Act, because it had failed to register to do business in Arkansas. The amended class-action complaint also pled causes of action against Fannie Mae for violations of the Arkansas Deceptive Trade Practices Act, unjust enrichment, and slander of title. The|sDickinsons also reiterated their claims against SunTrust for violations of the Arkansas Deceptive Trade Practices Act and unjust enrichment. The respondents removed the case to federal court. Following a decision by the Eighth Circuit Court of Appeals in JPMorgan Chase Bank N.A. v. Johnson, 719 F.3d 1010 (8th Cir.2013), in which the Eighth Circuit held that the “authorized to do business” clause was satisfied by a federal law authorizing banks to do business in Arkansas, the respondents filed a motion to dismiss for failure to state a claim. The Dickinsons opposed the motion to dismiss and filed a cross-motion to certify the issues to this court. The district court granted the Dickinsons’ motion and certified the above issue. We accepted certification. The Statutory Foreclosure Act establishes a system of nonjudicial foreclosure proceedings as an alternative to judicial foreclosures. Because the Act is in derogation of the common law, its provisions must be strictly construed and complied with. Henson v. Fleet Mortg. Co., 319 Ark. 491, 892 S.W.2d 250 (1995). The district court has asked for our interpretation of Arkansas Code Annotated section 18-50-117 (Repl. 2003), which provides, No person, firm, company, association, fiduciary, or partnership, either domestic or foreign, shall avail themselves of the procedures under this chapter unless authorized to do business in this state. (Emphasis added.) The issue on certification is the meaning of the phrase “authorized to do business in this state.” The Dickinsons argue that this phrase requires entities wishing to use the nonjudicial foreclosure procedures to register with and receive a certificate from the Arkansas Secretary of State. Respondents argue that authorization under federal law is sufficient. pThe first issue is whether Ark. Code Ann. § 18-50-117 is ambiguous. A statute is ambiguous if it is open to two or more constructions, or if it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. Voltage Vehicles v. Ark. Motor Vehicle Comm’n, 2012 Ark. 386, 424 S.W.3d 281; Yamaha Motor Corp, U.S.A. v. Richard’s Honda Yamaha, 344 Ark. 44, 38 S.W.3d 356 (2001). In this case, section 18-50-117 clearly contemplates that an entity must be “authorized to do business” in Arkansas to employ statutory foreclosure proceedings under the Statutory Foreclosure Act. However, the statutory language fails to provide direction as to what an entity must do to become “authorized to do business” in the state. As a result, we consider the statute to be ambiguous. When a statute is ambiguous, this court must interpret it according to legislative intent, and our review becomes an examination of the whole act. Simpson v. Cavalry SPV I, LLC, 2014 Ark. 363, 440 S.W.3d 335. In reviewing the Act in its entirety, this court will reconcile provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. Id. In examining other sections of the Statutory Foreclosure Act to determine legislative intent for section 18-50-117, we note that section 18-50-102 also employs the phrase “authorized to do business.” As initially enacted,[1] section 18-50-102 (1987) provided, (a) A trustee of a deed of trust shall be any: (2) Bank or savings and loan association authorized to do business under the |filaws of Arkansas or those of the United States. Ark. Code Ann. § 18-50-102(a)(2)(empha-sis added). Section 18-50-102(a)(2) allows an entity to be a trustee under the Statutory Foreclosure Act if the trustee is authorized to do business under the laws of the United States. The Dickinsons, however, argue that authorization to do business under the laws of the United States is insufficient for purposes of section 18-50-117. Thus, if we were to adopt the Dickin-sons’ argument, an entity authorized to do business under the laws of the United States but not registered in Arkansas could be a trustee in a nonjudicial foreclosure under section 18-50-102 but simultaneously could not avail itself of the procedures of the Statutory Foreclosure Act according to section 18-50-117. However, the remaining sections of the Statutory Foreclosure Act contain provisions expressly directed at the trustee regarding, for example, publication of notice (Ark. Code Ann. § 18-50-105) and application of the proceeds of sale (Ark. Code Ann. § 18-50-109). To hold that an entity could be appointed trustee under section 18-50-102 but then prohibited from utilizing other sections of the statute governing actions of the trustee is an inconsistent and inharmonious reading of the provisions. Respondents’ position, that section 18-50-117 allows authorization under the laws of the United States, is the most cogent interpretation because it affords a consistent meaning to the phrase “authorized to do business” in both sections of the statute. The Eighth Circuit Court of Appeals has recently examined this issue and agreed that authorization under federal law is sufficient to comply with section 18-50-117. The Eighth Circuit compared the language of section 18-50-117 to section 18-50-102: | (¡Section 18-50-102(a) determines who may serve as a trustee in a non judicial foreclosure proceeding. As initially enacted, it allowed any “[bjank or savings and loan authorized to do business under the laws of Arkansas or those of the United States ” to be a trustee. Ark. Code Ann. § 18-50-102(a)(2) (2003) (emphasis added). Construing §' 18-50-117 to allow only state law to authorize banks to do business in Arkansas would mean a national bank could be a trustee in a non judicial foreclosure without pri- or registration, but simultaneously could not avail itself of the benefits of the SFA. The homeowners see no inconsistency here. We believe the homeowners misread the statute. Section 18-50-117 requires authorization for an entity to avail itself of “the procedures under this chapter,” not just initiating a non judicial foreclosure. Because the appointment of a trustee is part of the “procedures” contained in the SFA, the two provisions are inconsistent. Reading the statute in the manner JPMorgan suggests — in other words, an entity may initiate a non judicial foreclosure pursuant to Arkansas law or the laws of the United States — produces this consistency because the phrase “authorized to do business” means the same thing in different parts of the statute. It is therefore a preferable interpretation. JPMorgan Chase Bank, N.A. v. Johnson, 719 F.3d 1010, 1016 (8th Cir.2013). The Eighth Circuit also looked to other related statutes to discern the legislative intent for section 18-50-117: Other Arkansas banking statutes lead to a similar conclusion. The Wingo Act provides a foreign corporation may become authorized to transact business in Arkansas by obtaining a certificate of authority from the Secretary of State. Ark. Code Ann. § 4-27-1501(a). Elsewhere, the Branching Act requires an out-of-state bank to file an application with the Arkansas Bank Commissioner before it may open a branch in Arkansas. Id. § 23-48-1001(a). These statutes, which contain express state certification requirements, demonstrate the General Assembly is capable of articulating a certification requirement when it desires one. Yet the SFA contains none. Arkansas courts presume the General Assembly has in mind previous statutes relating to the same subject matter when it enacts a new statute. See Cousins v. Dennis, 298 Ark. 310, 767 S.W.2d 296, 298 (1989). And when the General Assembly has demonstrated the ability to include qualifying statutory language in a statute, but chooses not to do so in a particular statute, Arkansas courts infer the omission was deliberate and evidences a different legislative intent. See Bush v. State, 338 Ark. 772, 2 S.W.3d 761, 764 (1999) (holding the legislature’s approval of granting a defendant credit against his sentence in a statute governing post-sentence 17electronic monitoring by the Department of Correction, but omission of that approval in a separate statute relating to pre-trial electronic monitoring, “is evidence that the legislature did not intend for credit to be given for electronic monitoring while a defendant is awaiting trial”); Chatelain v. Kelley, 322 Ark. 517, 910 S.W.2d 215, 219 (1995) (“[T]he General Assembly knows how to include proper terminology or exclude it in accordance with its intent....”), overruled on other grounds by Aka v. Jefferson Hosp. Ass’n, 344 Ark. 627, 42 S.W.3d 508 (2001); Hales v. State, 299 Ark. 93, 771 S.W.2d 285, 286 (1989). Applying these principles to the present matter, we must presume the General Assembly did not intend to include in § 18-50-117 the exclusive state registration it has insisted upon in other statutes. Id. at 1016-17. Decisions of the federal circuit courts are not binding on this court, but we may choose to follow their rationale if we find it persuasive. Larry Hobbs Farm, Equip., Inc. v. CNH Am., LLC, 375 Ark. 379, 291 S.W.3d 190 (2009). In this case, we find the Eighth Circuit’s reasoning to be the correct interpretation of the statutory language. Having established that section 18-50-117 does not require an entity to be licensed under Arkansas law, the only remaining issue in the certified question is whether Fannie Mae is authorized to do business in this state. The Dickinsons argue that the Federal National Mortgage Association Charter Act, 12 U.S.C. §§ 1716 et seq., does not provide Fannie Mae with enumerated or implied powers to conduct statutory foreclosures. The Dickinsons’ reading is too narrow. The issue is not whether the charter grants Fannie Mae explicit powers to foreclose but whether it authorizes Fannie Mae to do business in this state, which it unquestionably does. According to the charter, Fannie Mae has the power to “purchase, service, sell, or otherwise deal in any mortgages” 12 U.S.C. § 1717. Additionally, the charter states that Fannie Mae is authorized to “conduct its business without regard to any qualification or similar statute in any State.” 12 U.S.C. § 1723(a). The charter clearly | scontemplates that Fannie Mae will engage in the business of dealing in mortgages in any state. Such authorization is sufficient to satisfy the requirements of section 18-50-117. Thus, Fannie Mae satisfies the Statutory Foreclosure Act’s authorized-to-do-business requirement contained in section 18-50-117. Certified question answered. Hart, J., dissents. . The General Assembly has subsequently amended section 18-50-102 effective July 27, 2011, but no party has argued that the amendment applies to this case. Act of Mar. 31, 2011, No. 901 § 2, 2011 Ark. Acts 3615, 3617.